C.R. BARD, INC., Plaintiff–Appellee,

v.

ADVANCED CARDIOVASCULAR SYS-
TEMS, INC., Defendant–Appellant.

No. 89–1719.

United States Court of Appeals,
Federal Circuit.

Aug. 2, 1990.

James J. Foster, Wolf, Greenfield & Sacks, P.C., Boston, Mass., for plaintiff-appellee. With him on the brief were Arthur Z. Bookstein and John L. Welch.

Ford F. Farabow, Jr., Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., for defendant-appellant. With him on the brief was J. Michael Jakes. Also on the brief was Richard A. Bardin, Fulwider, Patton, Lee & Utecht, Los Angeles, Cal., of counsel.

Before NIES, Chief Judge,* and MICHEL and PLAGER, Circuit Judges.

PLAGER, Circuit Judge.

This is a case of claimed infringement of a method patent for a medical treatment. Defendant–Appellant Advanced Cardiovascular Systems, Inc. (ACS) was marketing the only perfusion catheter approved by the United States Food and Drug Administration for use in coronary angioplasty. Plaintiff–Appellee C.R. Bard, Inc. (Bard) sued ACS for alleged infringement of U.S. Patent No. 4,581,017 ('017), application for which was filed in 1983 and which issued to Harvinder Sahota in 1986; Bard had purchased all rights to the '017 patent as of December 31, 1986. The '017 patent relates to a *method* for using a catheter in coronary angioplasty. On July 28, 1989, the United States District Court for the Central District of California (No. SA CV 88–646–JSL) granted plaintiff Bard summary judgment against ACS determining that the '017 patent was not invalid as obvious, and finding infringement of claim 1 of the '017 patent. We reverse the grant of summary judgment and remand the case for further proceedings.

## I. Background

### A.

In the human circulatory system, the left ventricle of the heart pumps blood into the aorta, the body's largest artery, which then distributes the blood to smaller arteries throughout the body. The first arteries to branch off from the aorta are the left and right main coronary arteries, which provide blood to the heart muscle itself.

Atherosclerosis may cause these arteries to be progressively narrowed (stenosis) by the formation of plaque within the arteries resulting in coronary artery disease. This decreases blood flow to the heart muscle and may cause problems ranging from chest pain (angina) to, in the extreme, a fatal heart attack (myocardial infarction).

Bypass surgery allows the grafting of a vein to the affected coronary artery to bypass the stenosis. Percutaneous transluminal coronary angioplasty (PTCA), an alternative procedure, involves inserting a deflated balloon dilation catheter through the patient's arteries to reach the stenosis in the coronary artery. The balloon is inflated to dilate the stenosis and then deflated and removed to restore blood flow to the heart.

A difficulty associated with PTCA is that a prolonged blockage of blood flow to the heart muscle in the course of the procedure, caused by the inflated balloon, may itself result in angina or a heart attack. Typically during a PTCA, repeated inflations of the balloon, each lasting from 60–90 seconds, are performed.

### B.

U.S. Patent No. 4,423,725 ('725), filed in 1982 and issued in 1984, discloses a catheter having a multiple surgical cuff with an inflatable cuff member, and having a central lumen or channel containing side window openings in fluid communication with the central lumen. The side openings allow blood to circulate through the central lumen even while the inflatable cuff is inflated, thus avoiding blockage of fluid flow when the cuff member is inflated. The '725 patent discloses that, in an angioplasty,

> the side openings ... should be located at the level of the aorta to create the highest blood pressure and to prevent

---

\* Chief Judge Nies assumed the position of Chief Judge on June 27, 1990.

the side openings ... from being closed laterally by an adherent small artery wall.

In 1983, inventor Sahota filed a patent application (ultimately issuing as the '017 patent, the patent at issue in this case) having (1) device claims for a catheter to administer an angioplasty treatment and (2) method claims for the manner in which a surgeon would use the catheter in administration of an angioplasty treatment. All claims were rejected by the patent examiner. In particular, claim 4 of the application (which, following significant amendment, became claim 1 of the '017 patent) was rejected, *inter alia*, in view of the prior art '725 patent.

Following this rejection, the inventor modified certain claims. These modified claims were also rejected. Following this rejection, the inventor removed all claims to a catheter, and claimed only a *method* of administering an angioplasty.

In twice amending claim 4 of the application, the inventor argued to the examiner that "the proximal orifices which admit blood to the main lumen in the blood catheter [are] *'immediately adjacent said balloon'*" [emphasis supplied].[1] Claim 4 of the application was ultimately allowed as claim 1 of the '017 patent, and contained the "immediately adjacent" language.

### C.

The ACS catheter, sold under the name ACS Stack Perfusion Catheter, is a balloon-type catheter having side openings in the main lumen located near the proximal end of the balloon. The ACS catheter's main lumen is simply open past the distal end of the balloon enabling blood to flow through the catheter while the balloon is inflated. Plaintiff Bard alleges that the ACS catheter is especially adapted for use by a surgeon in the course of administering a coronary angioplasty in a manner that infringes claim 1 of the '017 patent, that therefore

ACS is a contributory infringer, and that ACS actively induces infringement.

ACS denied both charges and challenged the validity of the Bard patent. The district judge agreed with Bard and granted Bard's request for summary judgment, finding ACS to have "actively induced or contributed to [the] infringement" of claim 1 of the '017 patent, and to have failed to prove the invalidity of the '017 patent. *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, No. SA CV 88–646–JSL, slip op. at 14 (C.D. Cal. July 28, 1989).

### II. Discussion

### A.

The law governing summary judgment is well established. Summary judgment is as appropriate in a patent case as it is in any other case. *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1561, 7 USPQ2d 1548, 1551 (Fed.Cir.1988); *Spectra Corp. v. Lutz*, 839 F.2d 1579, 1581 n. 6, 5 USPQ2d 1867, 1869 n. 6 (Fed.Cir.1988). A motion for summary judgment is properly granted where

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

The party moving for summary judgment carries the burden of demonstrating the absence of any genuine issue of material fact, and that the party so moving is entitled to judgment as a matter of law. *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679, 223 USPQ 1286, 1287–88 (Fed.Cir.1984). In ruling on a motion for summary judgment, the district court is required to view the evidence presented in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of the nonmoving party. However, the nonmoving party must do more

---

1. The proximal end of the catheter refers to that end which is nearest the doctor during use, i.e., the end remaining outside the patient. The term "distal" refers to the end of the catheter inserted into the patient. The terms proximal and distal are used to indicate positions relative to these ends.

than simply present some evidence as to an issue it asserts is in dispute. Rather, the standard is that sufficient evidence must be forthcoming such as to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d at 1561, 7 USPQ2d at 1550. In reviewing the grant by the trial court of a summary judgment motion, this court is not bound by the court's holding that no material facts are in dispute; we are required to determine for ourselves whether the standards for summary judgment have been met. *A.B. Chance Co. v. RTE Corp.,* 854 F.2d 1307, 1310–11, 7 USPQ2d 1881, 1884 (Fed.Cir.1988).

### B.

Bard alleges that under 35 U.S.C. § 271(b), (c) (1988), ACS has both (1) induced infringement of method claim 1 in the '017 patent and (2) contributorily infringed. Of course, a finding of induced or contributory infringement must be predicated on a direct infringement of claim 1 by the users of the ACS catheter. *See Met–Coil Sys. Corp. v. Korners Unltd., Inc.,* 803 F.2d 684, 687, 231 USPQ 474, 477 (Fed. Cir.1986); *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co. Ltd.,* 754 F.2d 345, 348–49, 224 USPQ 863, 865–66 (Fed.Cir.1985); *Aro Mfg. Co. v. Convertible Top Co.,* 365 U.S. 336, 341, 81 S.Ct. 599, 602, 5 L.Ed.2d 592 (1961).

### 1.

Bard argues that by selling its catheter for use by surgeons in angioplasty procedures, ACS is a contributory infringer of Bard's method claim 1 in the '017 patent. Section 271 of Title 35, United States Code, deals with infringement of patents; subsection (c) specifies what is necessary to be a contributory infringer. For purposes of this case, the statute requires that ACS sell a catheter for use in practicing the '017 process, which use constitutes a material part of the invention, knowing that the catheter is especially made or adapted for use in infringing the patent, and that the catheter is not a staple article or commodity of commerce suitable for substantial noninfringing use.

In asserting ACS's contributory infringement of claim 1, Bard seeks to establish the requisite direct infringement by arguing that there is no evidence that any angioplasty procedures using the ACS catheter would be noninfringing. Testing this assertion requires a two step analysis. First is a determination of the scope of the claim at issue. Second is an examination of the evidence before the court to ascertain whether, under § 271(c), use of the ACS catheter would infringe the claim as interpreted. *See ZMI Corp. v. Cardiac Resuscitator Corp.,* 844 F.2d 1576, 1578–79, 6 USPQ2d 1557, 1559–60 (Fed.Cir.1988); *Autogiro Co. of America v. United States,* 384 F.2d 391, 401, 181 Ct.Cl. 55, 155 USPQ 697, 705 (1967).

■ Claim interpretation, which is a question of law, involves examination of the claim at issue, the specification, and the prosecution history. *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 866–67, 228 USPQ 90, 93 (Fed.Cir.1985). Claim interpretation may depend upon conflicting evidentiary material which can give rise to a genuine factual dispute. Resolution of any such factual dispute is required for proper claim interpretation. *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1579, 12 USPQ2d 1382, 1385–86 (Fed.Cir.1989); *Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 837 F.2d 1044, 1054, 5 USPQ2d 1434, 1441 (Fed.Cir.), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988).

Claim 1 of the '017 patent claims, *inter alia,*

[a] method of administering an angioplasty treatment to a patient to produce acceptable blood flow in a stenotic region of a coronary artery having restricted blood flow, comprising:

inserting a tube having an outer surface enclosing a main lumen terminating in a main axial orifice into said coronary artery ...

* * * * * *

channeling blood flow through the wall of said proximal portion of said main lumen immediately adjacent said balloon to fluidly connect locations within said coronary artery surrounding said proximal and distal portions of said tube while said balloon is inflated within said coronary artery to conduct blood downstream from the portion of said coronary artery occluded by the inflated balloon.

■ Bard argues that the prior art '725 patent teaches the use of the catheter with the inlets (side openings) where the blood enters the tube placed only in the aorta, whereas the '017 method in suit involves insertion of the catheter into the coronary artery in such a manner that the openings "immediately adjacent [the] balloon fluidly connect locations within [the] coronary artery surrounding [the] proximal and distal portions of [the] tube." Thus, Bard argues, a surgeon, inserting the ACS catheter into a coronary artery to a point where an inlet at the catheter's proximal end draws blood from the artery, infringes the '017 patent.

To fully understand this difference, it is important to note that the ACS catheter has a series of ten openings in the tube near, and at the proximal end of, the balloon. The first of these openings—the one closest to the balloon—is approximately six millimeters (less than ¼ inch) from the edge of the proximal end of the balloon. The remainder are located along the main lumen at intervals, the furthest from the balloon being 6.3 centimeters (approximately 2½ inches) away.

It would appear that three possible fact patterns may arise in the course of using the ACS catheter during a PTCA. The first pattern involves positioning the catheter such that all of its side openings are located only in the aorta. This is clearly contemplated by the prior art '725 patent cited by the examiner; claims to this method were expressly given up by inventor Sahota during patent prosecution and are

not now available to Bard. *Advance Transformer Co. v. Levinson,* 837 F.2d 1081, 1083, 5 USPQ2d 1600, 1602 (Fed.Cir. 1988); *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 870–71 (Fed.Cir.1985).

In the second of the possible fact patterns, all of the side openings are located within the coronary artery. This situation appears to have been contemplated by the '017 patent, the method patent at issue. In this situation, it correctly can be said that blood flowing through the main lumen will "fluidly connect locations within [the] coronary artery surrounding [the] proximal and distal portions of [the] tube."

In the third fact pattern, some of the side openings are located in the aorta and some are located in the artery. The trial judge concluded,

[t]hat ACS has added extra holes further from the balloon does not affect the conclusion of infringement, as the patent does not require that *all* holes be "immediately adjacent" the balloon, nor that the blood flowing through the balloon come *solely* from the coronary artery.

*C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.,* slip op. at 13 (emphasis in original).

There is evidence in the record that 40 to 60 percent of the stenoses that require angioplasty are located less than three centimeters from the entrance to the coronary artery.[2] ACS argues that therefore the ACS catheter may be used in such a way that all of the openings are located in the aorta. Even assuming that the trial judge's conclusion is correct that claim 1 is applicable to the third of the fact patterns, it remains true that on this record a reasonable jury could find that, pursuant to the procedure described in the first of the fact patterns (a noninfringing procedure), there are substantial noninfringing uses for the ACS catheter.

Whether the ACS catheter "has no use except through practice of the patented method," *Dawson Chemical Co. v. Rohm*

2. This evidence, submitted by ACS, was not contradicted in the record. In oral argument, counsel for Bard stated that in 98 percent of the cases the stenosis is located well into the coronary artery. Of course, argument by counsel does not constitute evidence. *In re Teledyne Indus., Inc.,* 696 F.2d 968, 971, 217 USPQ 9, 11 (Fed.Cir.1982).

& Haas Co., 448 U.S. 176, 199, 100 S.Ct. 2601, 2614, 65 L.Ed.2d 696 (1980), is thus a critical issue to be decided in this case. As the Supreme Court recently noted, "[w]hen a charge of contributory infringement is predicated entirely on the sale of an article of commerce that is used by the purchaser [allegedly] to infringe a patent, the public interest in access to that article of commerce is necessarily implicated." *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 440, 104 S.Ct. 774, 788, 78 L.Ed.2d 574 (1983). Viewing the evidence in this case in a light most favorable to the nonmoving party, and resolving reasonable inferences in ACS's favor, it cannot be said that Bard is entitled to judgment as a matter of law. The grant of summary judgment finding ACS a contributory infringer under § 271(c) is not appropriate.

### 2.

■■■ A person *induces* infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement. *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 669, 7 USPQ2d 1097, 1103 (Fed.Cir.), *cert. denied*, 488 U.S. 968, 109 S.Ct. 498, 102 L.Ed.2d 534 (1988). Bard argues that ACS induced infringement under § 271(b) by: 1) providing detailed instructions and other literature on how to use its catheter in a manner which would infringe claim 1; and 2) having positioned the inlets near the balloon's proximal end so as to allow a user of the ACS catheter to infringe claim 1. As already discussed, on a motion for summary judgment we view the evidence in a light most favorable to ACS, the nonmoving party, and draw all reasonable inferences in its favor. The evidence before the trial judge on the motion for summary judgment was at best ambiguous regarding the fact pattern or patterns under which the catheter was to be used. Because a genuine issue of material fact thus exists, a grant of summary judgment finding ACS induced infringement is also not appropriate.

**3.** In view of the trial court's claim interpretation as including the third fact pattern described above, there would also appear to be a substan-

### 3.

■■■ Included in the grant of summary judgment in Bard's favor was a determination by the trial judge that the '017 patent was not invalid for obviousness. This conclusion rested solely on the statutory presumption of validity. However, ACS presented evidence on this issue, including certain prior art, from which inferences could reasonably be drawn contrary to those of the trial court. Thus, ACS has raised a genuine issue of fact. Accordingly, the grant of summary judgment of no invalidity must be reversed and remanded for a full hearing and determination of this issue.[3] *Cf. Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 686, 14 USPQ2d 1942, 1950 (Fed.Cir.1990).

### III. Conclusion

The grant of summary judgment is reversed in all respects, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

### IV. Costs

Costs are awarded to ACS.

REVERSED AND REMANDED.

■■■

tial question that the '017 claims, so construed, would have been obvious under 35 U.S.C. § 103.