60 F.3d 840
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 REGENT LIGHTING CORPORATION, Plaintiff-Appellant,
v.
FL INDUSTRIES, INC., Curtis Moore and Joe Harriman,
Defendants-Appellees.
 No. 94-1162.
 United States Court of Appeals, Federal Circuit.
 June 2, 1995.
 
 Before RICH, CLEVENGER, and SCHALL, Circuit Judges.
 DECISION
 RICH, Circuit Judge.
 
 
 1
 Regent Lighting Corporation (Regent) appeals the December 23, 1993, judgment of the United States District Court for the Western District of Tennessee, denying its request for a declaratory judgment of (i) patent invalidity, alleging the claimed invention is anticipated, or would have been obvious, (ii) non-infringement (35 U.S.C. Sec. Sec. 102, 103, and 271[1]), and (iii) unfair competition. The district court held claims 6 and 9 of U.S. Patent No. 4,410,931 ('931), owned by FL Industries, Inc. (FLI),[2] to be not invalid and that Regent literally infringes these claims. The district court denied Regent's unfair competition claim and Regent does not appeal this holding. We reverse the holding that claims 6 and 9 were not invalid and vacate the holding of infringement.
 
 DISCUSSION
 
 2
 FLI set out to economically manufacture an outdoor quartz floodlight fixture similar to that of a competitor. Figures 1 and 2 from the '931 patent depict the preferred embodiment of FLI's claimed invention.
 
 
 3
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 4
 FLI's initial design included a bezel, which is a frame assembly that eliminates localized forces that can cause a glass lens to break. The bezel effectively distributes the force applied to the lens to decrease any point-loading stresses. The manufacturing cost of the fixture with the bezel design, however, was not competitive. FLI's next approach was to eliminate the bezel. The resulting fixture has a flat glass lens held with spring clips 50 against a gasket around the housing opening. FLI obtained the '931 patent, entitled "Retention Device for Lighting Fixture Cover," for this design. The claims of the '931 patent define an enclosed luminaire (lighting fixture) with a housing, refractor lens, and closure device.
 
 
 5
 The only issue on appeal is the validity of claims 6 and 9. Claim 6 reads:
 
 
 6
 A totally enclosed luminaire comprising in combination, an enclosing housing, a refractor lens and a closure device for holding said lens on said housing, in which said housing comprises a plurality of closure walls about a generally vertical, substantially rectangular face opening, a peripheral flange of said housing framing said opening a recess within said framing flange with said recess surrounding the opening, a depressible gasket within said recess surrounding the opening, said lens comprising a generally planar translucent rigid sheet sized to cover said opening with the periphery of the sheet inwardly of said flange and said sheet covering the extent of the gasket within said recess, and said closure device comprising a plurality of clips spaced about the periphery of said sheet to form the sole means for holding said lens on said housing, each of said clips comprising a formed spring member individually moveable from a first position compressing said sheet against said gasket into retaining relation for tightly holding said lens in covering relation to said opening to a second position outwardly of the periphery of the sheet, whereby with all spring members in the second position said sheet is released from the combined holding of said clips and said sheet may be withdrawn from said housing, and in which each said spring member comprises a lens gripping finger adapted to rest against an outer surface of the lens with the spring member in its first position and each spring member comprising an arcuate section extending about said ridge into a gripping relation with a wall of said housing.
 
 Claim 9 reads:
 
 7
 A luminaire as claimed in claim 6, in which said luminaire with said spring members in their first position comprises a fluid tight structure with said lens and gasket enclosing the opening in a fluid tight condition.
 
 
 8
 Regent, also in the lighting business, sought a declaratory judgment that claims 6 and 9 are invalid as anticipated and obvious. Under 35 U.S.C. Sec. 282, patents are presumed valid and the burden of proving invalidity is on the party making the assertion. This presumption, however, can be overcome by clear and convincing evidence. The district court held that Regent failed to overcome the presumption and thus held that the '931 patent was not invalid. The district court also held that Regent's lighting fixture infringed claims 6 and 9. Regent argues that the district court erred in not finding that it had met its burden of proving claims 6 and 9 were anticipated by or obvious in view of the Thomas fixture and related brochures (hereinafter the Thomas references). Based on our holding of obviousness, discussed below, we need not reach the issue of anticipation.
 
 
 9
 A claimed invention is obvious, and therefore the patent claims are invalid, "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. Sec. 103. Obviousness presents a question of law reviewed by this court de novo. Panduit Corp. v. Dennison Mfg. Co., 810 F.2d at 1565, 1 USPQ2d at 1594-95. We review the factual findings underlying the legal conclusion of obviousness under the clearly erroneous standard. Graham v. John Deere Co., 383 U.S. 1, 17, 148 USPQ 459, 467 (1966).
 
 
 10
 As explained in Panduit, "[t]he decisional process en route to a Sec. 103 conclusion involves more than the answers to the fact inquiries of Graham," it also involves a legal determination focusing on "- what is the invention claimed" and "- what is the prior art." Panduit, 810 F.2d at 1567-68 1 USPQ2d at 1597 (emphasis in original).
 
 A. Legal Determinations
 
 11
 We begin our inquiry by construing the claims to determine what is the invention claimed. "[T]he interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court." Markman v. Westview Instruments, Inc., 52 F.3d 967, 34 USPQ2d 1321, 1322 (Fed. Cir. 1995)(en banc). Because claim construction is a matter of law, we review the district court's construction de novo on appeal. To determine the intended meaning of a claim, we look to the claim language in the context of the specification and the prosecution history. C.R. Bard Inc. v. Advanced Cardiovascular Sys., 911 F.2d 670, 673, 15 USPQ2d 1540, 1543 (Fed. Cir. 1990).
 
 
 12
 FLI argues that the '931 patent as a whole clearly shows that the invention relates to outdoor lighting fixtures having planar/flat/rigid/translucent sheets as lenses. FLI goes on to state that the '931 patent requires flat glass lenses that can withstand high temperatures. The district court adopted FLI's construction in concluding that claims 6 and 9 define an outdoor quartz lighting fixture with a glass lens. After a thorough review of the claims, the specification, and the prosecution history, we do not construe the claims so narrowly.
 
 
 13
 In interpreting the claims, it appears that the district court relied on the patent drawings and FLI's commercial product instead of focusing on what invention is defined by the claims. This approach led the district court to read extraneous limitations --outdoor quartz light with flat glass lens-- into the claims that they do not contain. Extraneous limitations are not to be read into the claims. DuPont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1433-34, 7 USPQ2d 1129, 1132 (Fed. Cir.), cert. denied, 488 U.S. 986 (1988). FLI argues that the policy of interpreting a claim to have a reasonably narrow meaning to render the claim valid is a "well established rule of claim interpretation." We rejected the notion that claims are to be "saved" from invalidity by reading extraneous limitations into them in DuPont de Nemours, 849 F.2d at 1433-34, 7 USPQ2d at 1132.
 
 
 14
 We construe the claims to define an enclosed luminaire for indoor or outdoor use, quartz halogen or florescent, with a housing, a glass or plastic refractor lens, and a closure device. There are no limitations in the claims supporting the narrow construction adopted by the district court such that the claims define only the preferred embodiment--an outdoor quartz halogen lighting fixture with a flat glass lens.
 
 
 15
 Having determined what the claimed invention is, we next determine what the prior art is. The parties have stipulated that the references described below are prior art. During prosecution, the examiner rejected the claims in view of U.S. Patent No. 3,720,432 (the Chudler patent), which discloses an indoor fluorescent lighting fixture. Applicant overcame this rejection by pointing out that the invention claimed does not rely on the force of gravity to hold the lens in place, and by amending the claims to recite that the lens is held against the gasket solely by clips, and that the lens opening is generally vertical.
 
 
 16
 At trial, Regent introduced the Thomas references as prior art comprising a lighting fixture and a brochure describing it. This prior art was not before the examiner. As can be seen in the diagram below, the Thomas fixture is a luminaire comprising a housing, reflector lens, and closure device.
 
 
 17
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 B. The Factual Determinations Under Graham
 
 18
 We next review the district court's findings on the factual inquiries required by Graham, 383 U.S. at 17, 148 USPQ at 467. Included are 1) the scope and content of the prior art, 2) the differences between prior art and the claimed invention, 3) the level of ordinary skill in the art, and 4) secondary considerations. Id. We review these findings under the clearly erroneous standard.
 
 
 19
 1. Scope and Content of the Prior Art.
 
 
 20
 In connection with the scope and content of the prior art, the district court found the Thomas references to be nonanalogous art, that is, too remote to be considered relevant prior art. We disagree. A reference is analogous art if it is within the inventor's field of endeavor. If the court finds the reference to be outside this field, the court must determine whether the reference is "reasonably pertinent to the problem" facing the inventor. In re Clay, 966 F.2d 656, 658-59, 23 USPQ2d 1058, 1060 (Fed. Cir. 1992).
 
 
 21
 The district court found, based on its erroneous claim construction, that the inventor's field of endeavor was "outdoor quartz halogen floodlights." As discussed above, the claimed subject matter is not limited to outdoor quartz halogen lights; therefore, this finding is clearly erroneous considering the scope of the appealed claims. The claimed invention, not illustrative embodiments, is the focus of the obviousness inquiry. Additionally, the district court failed to appreciate the examiner's reliance on the Chudler patent, an indoor fluorescent lighting fixture, as relevant prior art. The Thomas references are within the inventor's field of endeavor, in view of what is claimed, and are accordingly relevant prior art. The Thomas references are therefore relevant to the consideration of obviousness under Sec. 103 and are not "nonanalogous."
 
 
 22
 The district court found that the particular problem facing the inventor was to produce such a light at a "reduced cost and size." Because we conclude that the Thomas references are within the inventor's field of endeavor, we need not determine whether they are reasonably pertinent to the particular problem the inventor faced. We note, however, that, in light of proper claim construction, the problem facing the inventor was attaching a frameless lens to a housing of a light fixture using spring-clips, whether for indoor or outdoor use, whether quartz halogen or another type, and whether the lens is glass or plastic. Lens attaching means is exactly what the Thomas references disclose.
 
 
 23
 2. Differences Between the Prior Art and the Claimed Invention.
 
 
 24
 The district court did not specifically address differences between the prior art and the claimed invention because the district court did not consider the Thomas references relevant. It is settled, however, that "[w]hen the prior art is compared with erroneously interpreted claims, [as here,] findings of differences between the prior art and the claims will necessarily be clearly erroneous." Panduit 810 F.2d at 1576, 1 USPQ2d at 1603.
 
 
 25
 3. Ordinary Skill in the Art.
 
 
 26
 The parties stipulated that one having ordinary skill in the art is one with a bachelors degree and two to three years of design or engineering experience in the art, or if no bachelors degree, then three to six years of design experience in the art. There is no dispute on this point.
 
 
 27
 4. Objective Evidence of Nonobviousness.
 
 
 28
 We next consider objective evidence of nonobviousness, the so-called "secondary considerations" as set out in Graham. The district court considered one factor, commercial success; it did so however without finding the required nexus between the merits of the claimed invention and the commercial success. The opinions of this court hold that evidence on secondary considerations is always to be taken into account. Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1539, 218 USPQ 871, 879 (Fed. Cir. 1983). If that evidence is to be given substantial weight en route to an obviousness decision, however, a nexus is required between the merits of the claimed invention and the evidence offered. Id. "Objective evidence of nonobviousness must be commensurate in scope with the claims which the evidence is offered to support." In re Grasselli, 713 F.2d 731, 218 USPQ 769 (Fed. Cir. 1983). Here, a nexus was not established because the claims, properly construed, are not commensurate in scope with the offered evidence. Rather, the evidence embraces only outdoor quartz halogen fixtures with glass lenses, yet the claimed subject matter as a whole is broader, as discussed above. Accordingly, this evidence should not be afforded substantial weight in the obviousness determination.
 
 
 29
 In sum, the district court's error in claim construction has permeated the court's findings, leading it to reach clearly erroneous conclusions regarding the Graham factors.
 
 C. The Legal Conclusion under Sec. 103
 
 30
 The correct legal question of obviousness under Sec. 103 is whether, looking at the claimed invention as a whole, a luminaire using spring clips to attach a lens to a housing that has a gasketed flange to keep water out, would have been obvious at the time the invention was made to the hypothetical person having ordinary skill in the art to which the subject matter pertains. Kimberly Clark Corp. v. Johnson & Johnson, 745 F.2d 1437, 223 USPQ 603 (Fed. Cir. 1984). We hold that the Thomas references teach such a luminaire as they disclose a luminaire with spring clips to attach a lens to a fully gasketed housing to keep water out. Accordingly, in view of the Thomas references, the invention as defined in claims 6 and 9 of the '931 patent would have been obvious. These claims are therefore invalid. The district court's contrary decision on validity is therefore reversed. Because we hold that these two claims are invalid, the district court's judgment regarding infringement is necessarily vacated.
 
 
 
 [1]
 Unless otherwise noted, all references to 35 U.S.C. are to the 1988 edition,
 
 
 [2]
 ITT Outdoor Lighting was a predecessor of FLI. FLI is now a wholly owned subsidiary of Thomas & Betts Holdings, Inc