NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**FLEET ENGINEERS, INC.,**
*Plaintiff-Cross-Appellant*

**v.**

**MUDGUARD TECHNOLOGIES, LLC,**
*Defendant*

**TARUN SURTI,**
*Defendant-Appellant*

_____

2022-2001, 2022-2076

_____

Appeals from the United States District Court for the Western District of Michigan in No. 1:12-cv-01143-PLM, Judge Paul L. Maloney.

_____

Decided:  August 15, 2023

_____

GEORGE THOMAS WILLIAMS, III, McGarry Bair PC, Grand Rapids, MI, for plaintiff-cross-appellant.

TARUN SURTI, Brentwood, TN, pro se.

_____

2    FLEET ENGINEERS, INC. v. MUDGUARD TECHNOLOGIES, LLC

Before MOORE, *Chief Judge*, LOURIE and STOLL, *Circuit Judges*.

PER CURIAM.

Tarun Surti appeals from decisions of the United States District Court for the Western District of Michigan in which he was awarded damages for infringement of U.S. Patent RE44,755 (the "'755 patent")[1] by Fleet Engineers, Inc., but was denied other claimed relief. *See Fleet Eng'rs, Inc. v. Mudguard Techs., LLC*, No. 1:12-cv-01143, 2021 WL 9057803 (W.D. Mich. Oct. 19, 2021).

In particular, Surti appeals from (1) a decision excluding certain evidence from trial, (2) an order narrowing the issues of infringement to a subset of the asserted claims, (3) grants of judgment as a matter of law ("JMOL") in favor of Fleet on claims of induced and contributory infringement, (4) portions of the jury verdict on infringement and damages, (5) failure to award attorney fees, and (6) failure to grant a permanent injunction.

Fleet cross-appeals, asserting that (1) the district court erred in not additionally granting JMOL in its favor on Surti's claims of direct infringement and that (2) the jury verdict on direct infringement was not supported by substantial evidence.

---

[1]    The '755 patent is a reissue of U.S. Patent 8,146,949 (the "'949 patent"), the original patent of interest in this case. The asserted claims of the '949 patent are identical to corresponding claims in the reissued '755 patent. The original filings by the parties in this litigation predated the reissue, and thus some of the underlying record and arguments refer to the '949 patent as the asserted patent. We refer to the asserted patent using the reissue number.

For the following reasons, we *affirm*.

BACKGROUND

Surti and Fleet have been locked in acrimonious litigation over mudflaps and Surti's '755 patent for over a decade.

The '755 patent relates to a "mud flap for preventing spray from the wheel of a vehicle on a wet roadway from impairing the vision of drivers of other vehicles." '755 patent, col. 1 ll. 12–15. Traditional mudflaps are often constructed from solid panels of rubber material. *Id.* col. 1 ll. 21–27. As a vehicle moves, air resistance can cause the mudflap to lift or "sail," allowing a spray of water and debris to reduce the visibility of the driver behind the vehicle equipped with the mudflap. *Id.* col. 1 ll. 16–27. The mudflaps described in the '755 patent purport to solve that problem using a series of vertical slots or channels through which air can flow. The invention thus purports to "separate[] air, water and road debris thrown up by a tire or wheel and direct[] the water and debris to the ground while allowing the air to pass through the air outlets." *Id.* col. 4 ll. 19–22. Claim 1 of the '755 patent recites:

> 1.    A mudflap for preventing spray from a wheel of a vehicle on a wet roadway from impairing the vision of drivers of other vehicles, comprising a vertically extending flap which is mounted to the rear of the wheel with a front side of the flap facing the wheel and a rear side facing away from the wheel, a plurality of laterally spaced, vertically extending vanes defining a plurality of vertically extending channels on the front side of the flap for directing water and debris from the wheel in a downward direction toward the ground and not to the rear or sides of the flap, and vertically extending slotted openings in the channels of a size permitting air to pass through

4    FLEET ENGINEERS, INC. v. MUDGUARD TECHNOLOGIES, LLC

> the openings to the rear of the flap and pre-
> venting water and debris from doing so.

*Id.* col. 4. ll. 40–52.

This case is now on its second appeal.  Our decision in the first appeal, which provides a more fulsome summary of the facts and procedural history through 2019, set forth how Fleet, a manufacturer of products for the trucking industry, brought an action seeking a declaratory judgment that its mudflaps do not infringe the '755 patent, and that the patent was invalid.  *See Fleet Eng'rs, Inc. v. Mudguard Techs., LLC*, 761 F. App'x 989 (Fed. Cir. 2019) ("*Fleet I*").  Surti counterclaimed, asserting claims of patent infringement, breach of contract, and misappropriation of trade secrets.  After the parties filed cross-motions for summary judgment, the district court granted Fleet's motion of non-infringement as well as finding it not liable for an alleged breach of contract and misappropriation of trade secrets.  J.A. 422–46.  Surti appealed and we held that unresolved factual issues precluded summary judgment on the issue of direct infringement.  *Fleet I*, 761 F. App'x at 992–94.  We also affirmed the court's finding that Surti failed to present evidence of a contract between Surti and Fleet, and thus upheld summary judgment on the contract-based claims.  *Id.* at 994.  Finally, we held that the district court did not err in granting summary judgment in favor of Fleet on the claim for misappropriation of trade secrets.  *Id.* at 994–95.

On remand, a jury evaluated infringement of claims 1, 2, 5, 8, 9, and 13 of the '755 patent by two subsets of Fleet products, referred to as the Group A and Group B products.  *See* J.A. 53–54.  Both product groups, shown below, include openings that are angled at approximately 45 degrees, separated into four quadrants.  The Group A products further contain vertical ridges and openings at or near the bottom of the mudflap, while the products in Group B do not.



J.A. 53.

At the close of evidence, but before the verdict, Fleet moved for JMOL on Surti's claims of direct, induced, contributory, and willful infringement. J.A. 942–46. The district court granted Fleet's motion as to induced and contributory infringement, holding that there was no evidence in the record to support either theory of liability, but declined to enter JMOL as to direct infringement and willfulness. J.A. 1091–92. The jury ultimately found that although Fleet's Group B products did not infringe the asserted claims of the '755 patent, the Group A products did. J.A. 54. That infringement, however, was not found to be willful. *Id.*, 56. The jury declined to award lost profits and instead awarded damages based on 4% of the gross sales of the Group A products, amounting to an award of $228,000. J.A. 1, 57. Surti appealed. Fleet cross-appealed.

We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

Surti raises multiple challenges on appeal. He first contends that the decision excluding certain evidence from trial constituted an abuse of discretion. In addition, he challenges an order narrowing the infringement issues to

a subset of claims in the '755 patent.  He further asserts that JMOL, granted in Fleet's favor on claims of induced and contributory infringement, was in error.  He also contends that portions of the jury verdict on infringement and damages were unsupported by substantial evidence.  Finally, he challenges the denial of attorney fees as well as the failure to enter a permanent injunction.  Fleet's cross-appeal asserts that the district court erred in not additionally granting JMOL in its favor on Surti's claims of direct infringement and that the jury verdict on direct infringement was not supported by substantial evidence.  We address each argument in turn.

I

We turn first to Surti's assertion that the district court's exclusion of witness testimony and evidence was an abuse of discretion.  According to Surti, the court "blocked [evidence pertaining to] the history of the case prior to the litigation date," including testimony from Surti himself, as well as from a mold manufacturer, an injection molder, and an engineer who designed original part drawings.  *See* Appellant's Br. ¶ 4; *see also* J.A. 709–11 (Surti's evidentiary motion), J.A. 5–8 (order denying Surti's evidentiary motion).

We review evidentiary rulings under the law of the regional circuit, here the Sixth Circuit.  *See SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1082 (Fed. Cir. 2014).  Under Sixth Circuit law, evidentiary decisions are reviewed for abuse of discretion and should only be reversed if they have caused more than harmless error.  *McCombs v. Meijer, Inc.*, 395 F.3d 346, 358 (6th Cir. 2005).  "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment."  *Miller v. Countrywide Bank, N.A.*, 708 F.3d 704, 707 (6th Cir. 2013) (internal quotation marks omitted).

Under that standard, Surti's arguments can best be understood as asserting that the district court made a clear error of judgment in excluding evidence. According to Surti, the excluded testimony and evidence was "very important for the Jury to know." Appellant's Br. ¶ 4. Abuse of discretion, however, is a highly deferential standard. And a party's opinion that excluded evidence was relevant, or even important, is insufficient to overturn a court's decision excluding that evidence. As the court explained, the identities of the witnesses that Surti wished to testify on his behalf were not disclosed until years after close of discovery and his additional excluded evidence did not appear to be relevant to the asserted claims of patent infringement. *See* J.A. 6–8. We agree and see no clear error of judgment. We therefore conclude that it was not an abuse of discretion for the court to exclude those witnesses and that evidence from the record.

## II

Surti next asserts that the district court erred in narrowing the infringement inquiry to only six of the '755 patent's 25 claims. In particular, according to Surti, the court "totally ignored" his "pleading for his '755 claim no. 19 that was properly filed and timely identified." Appellant's Br. ¶ 5. Fleet does not substantively address that issue in its response.

It is clear, however, that the district court did not ignore claim 19. Rather, it thoroughly evaluated the filings to identify the asserted claims after we suggested it do so in *Fleet I*. *See* 761 F. App'x at 993–94; J.A. 659–62. Moreover, although Surti refers to his assertion of claim 19 as "timely identified," that cannot be the case, because, as discussed below, claim 19 did not exist before the deadlines to amend the pleadings or the chart of asserted claims passed.

Surti's allegation amounts to a suggestion that the district court abused its discretion in declining to amend the scheduling order to allow for the assertion of claim 19. But

8    FLEET ENGINEERS, INC. v. MUDGUARD TECHNOLOGIES, LLC

a scheduling order may only be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of Rule 16's good cause standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (internal quotation marks omitted). "We review for abuse of discretion a district court's decision to amend its scheduling order to allow a late filing." *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005).

At the outset of this litigation, the district court issued a Case Management Order ("CMO") setting a March 1, 2013 deadline for motions to amend the pleadings. *See* District Court Docket No. 13 at 1. The CMO also required Surti to "file and serve a disclosure, listing each claim of the patents-in-suit that [he] contends have been infringed." *Id.* ¶ 3.a. Surti subsequently timely filed a disclosure asserting that Fleet "infringed claims 1, 2, 5, 8, 9, and 13" of the '949 patent. *See* District Court Docket No. 20 at 1. The CMO further required the parties to provide a "comprehensive chart" denoting "all claims of each patent-in-suit that [Surti] will contend at trial has been infringed." CMO ¶ 3.c; *see also* District Court Docket No. 27 at 2 (confirming Fleet's understanding that Surti asserted infringement of '949 patent claims 1, 2, 5, 8, 9, and 13). By mid-2013, the deadlines to amend the pleadings and the CMO, and the deadline to submit the chart of asserted claims had all passed, although the CMO allowed the parties to further "amend or modify the disclosures in the chart for good cause shown." CMO ¶ 3.c.

Thereafter, on February 11, 2014, the '949 patent reissued as the '755 patent. J.A. 104. Claims 1, 2, 5, 8, 9, and 13 were not amended during reissue and remained unchanged, although the '755 patent further contains claims not originally present in the '949 patent, including claim 19. *Compare* J.A. 102–03 ('949 patent claims 1–17) *with* J.A. 112–13 ('755 patent claims 1–25). Fleet subsequently

moved to amend its complaint to reference the reissued patent, and the district court found that good cause existed to do so. *See* District Court Docket No. 98 at 1–3. As the court explained, "[a]llowing Fleet Engineers to amend the complaint would not cause [Surti] prejudice as the claims in the amended complaint are identical to the claims in the original complaint, albeit against the reissue patent instead of the original patent." *Id.* at 3.

At no time did either party move to update the CMO or the chart of asserted claims to include additional claims added in the reissue patent, nor was there any attempt at showing good cause to do so. However, in filings made in September and October 2015, Surti asserted that Fleet had also infringed claim 19 of the '755 patent. J.A. 1321; *see also* District Court Docket No. 199 at 14 (referring to "asserted claims 1 and 19"); *Fleet I*, 761 F. App'x at 993–94 (noting the apparent confusion that these filings raised as to which claims were being asserted). The district court subsequently issued an order clarifying that claims 1, 2, 5, 8, 9, and 13 were the only properly asserted claims. J.A. 476. As the court explained, "Surti's attempt to bring [c]laim 19 into the dispute through his motion for summary judgment and his response to Fleet Engineers' motion is improper." *Id.*; *see also id.* at 661–62.

We agree. The CMO clearly required Surti to have moved for an amendment to add claim 19 to the dispute, and to support that motion with a showing of good cause. He did not do so. The district court therefore did not abuse its discretion in determining that claims 1, 2, 5, 8, 9, and 13 were the only claims in dispute.

## III

We next turn to the district court's decisions regarding granting JMOL. Surti asserts that JMOL, entered in Fleet's favor on claims of induced and contributory infringement (*see* J.A. 9, 1091), was granted in error. Fleet, in its cross-appeal, asserts that the court erred in not

further granting JMOL to Fleet on Surti's claims of direct infringement.

We review decisions on motions for JMOL under the law of the regional circuit, here the Sixth Circuit. *See SSL Servs.*, 769 F.3d at 1082. Under Sixth Circuit law, a district court's decision to grant JMOL is reviewed *de novo. Hanover Am. Ins. Co. v. Tattooed Millionaire Entm't, LLC*, 974 F.3d 767, 779 (6th Cir. 2020). "Judgment as a matter of law may only be granted if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005), *cert. denied*, 546 U.S. 1003 (2005).

According to Surti, Fleet "engaged in an 'induced infringement' when they co[n]tracted the manufacturing of" the Group A and B mudflaps "to the [m]old maker, Viking Tool & Engineering, and injection molder, H S Die & Engineering." Appellant's Br. ¶ 3; *see also id.* ¶ 4 (asserting that the district court "failed to recognize that [Fleet] engaged in 'induced infringement' by engaging [a] third party to manufacture the infringing mud flap").

A claim of induced infringement requires a showing not only of direct infringement, but further "that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 407 (Fed. Cir. 2018) (citation omitted); *see also C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990) (defining induced infringement under 35 U.S.C. § 271(b) as "actively and knowingly aiding and abetting another's direct infringement").

As the district court earlier found when it granted JMOL with respect to induced infringement, there was no evidence in the record that Fleet knowingly induced a third

party to infringe the '755 patent with a specific intent to encourage another's infringement. *See* J.A. 9, 1091. Surti has not pointed to any evidence in the record that the district court overlooked or misinterpreted in coming to that determination. Without a genuine issue of material fact on that matter, we conclude that the court did not err in granting JMOL in Fleet's favor as to induced infringement.

A claim of contributory infringement requires a showing of a sale, or an offer to sell, "a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c); *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1356 (Fed. Cir. 2018).

Just as the district court found in granting JMOL with respect to induced infringement, the court further found that Surti introduced no evidence that Fleet had sold a component of a patented combination such that it could be held liable for contributory infringement. *See* J.A. 9, 1091. Surti has not pointed to any evidence in the record that the district court overlooked or misinterpreted in coming to that determination. Moreover, there is no evidence in the record supporting a conclusion that either the Group A or Group B mudflaps were components or material parts of a patented whole as required under § 271(c). Without a genuine issue of material fact, we conclude that the court did not err in granting JMOL in Fleet's favor as to contributory infringement.

In its cross-appeal, Fleet asserts that the district court erred in not granting JMOL in its favor on Surti's claims of direct infringement. In particular, Fleet asserts that neither its Group A nor its Group B products have "a plurality of laterally spaced, vertically extending vanes defining a

plurality of vertically extending channels on the front side of the flap" as required by the claims of the '755 patent. *See* Appellee's Br. 70–79; J.A. 112–13 (providing the asserted claims). Fleet also argues that, although its Group A products have vertical slots at the bottom edge of the mudflap, the "slots do not define vertically extending channels to route water down the face of the mudflap and off the bottom of the mudflap" and that "[n]one of the slotted openings (vertical or otherwise) prevent water and debris from passing through them." Appellee's Br. at 75–77.

Fleet asserted the same arguments in its original motion for summary judgment, and the district court did originally grant Fleet's motion as to direct infringement. *See* J.A. 438–45. However, we overturned that grant of summary judgment in *Fleet I*. As we explained then, a genuine issue of material fact existed as to whether or not Fleet's products comprise the claimed vanes, *Fleet I*, 761 F. App'x at 992, as well as whether or not Fleet's products meet the "vertically extending" limitations, *id.* at 993. Fleet has provided no argument or evidence to suggest that these genuine issues of material fact did not still exist when it moved for JMOL. Instead, as it did in its motion for JMOL, Fleet argues on appeal that "there was substantial evidence introduced at trial" that its products do "not block water impinging upon [the] face" of the mudflap, but rather allow water and debris "to pass through the openings." Appellee's Br. at 76. Yet as the district court correctly identified when it denied Fleet's JMOL motion, the claims do not require that all water and debris be completely blocked from passing through the mudflap. J.A. 45. Rather, "[s]ome water and debris might pass through the slotted openings." *Id.*

Whether or not Fleet's products comprised vanes and vertical openings that prevented a sufficient amount of water and debris from passing through the mudflap such that they infringed Surti's patent was a question of fact for the jury. Given the existence of those genuine issues of

material fact, the district court did not err in declining to grant JMOL in Fleet's favor as to direct infringement.

## IV

We next turn to the parties' assertions that portions of the jury verdict are unsupported by substantial evidence. Surti contends as such for the verdicts of noninfringement by the Group B products, the decision not to award lost profits, and the finding of a lack of willful infringement. In its cross-appeal, Fleet asserts that the jury's finding of infringement by the Group A products was unsupported by substantial evidence.

"A determination of infringement, both literal and under the doctrine of equivalents, is a question of fact, reviewed for substantial evidence when tried to a jury." *TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., LLC*, 375 F.3d 1126, 1133 (Fed. Cir. 2004).

Surti first asserts that the jury verdict that Fleet's Group B products did not infringe the asserted '755 patent claims was unsupported by substantial evidence. According to Surti, because the jury found that the Group A products infringed, it should have also found that the Group B products infringed. Appellant's Br. ¶ 3. The Group A and Group B products differ from one another in that only the Group A products contain vertical ridges and openings at or near the bottom of the mudflap. *See* J.A. 24, 53. Fleet responds that the jury could have reasonably come to its conclusion of noninfringement by the Group B products in view of (1) the absence of a vane, defined as "a relatively thin, rigid structure, like a blade, that is attached to another structure or surface," (2) the absence of vertical channels or slots, or (3) openings that are not "of a size to permit air to pass through the openings to the rear of the flap and preventing water and debris from doing so." Appellee's Br. at 30. We agree with Fleet that the jury's determination that Group B products did not directly infringe the '755 patent was supported by substantial evidence. In particular,

the jury reasonably could have found that the Group B products lack the vertically extending vanes, channels, and slotted openings required by the claims.

Surti further argues that even if the Group B products lacked the express structures recited in the '755 patent claims, the jury still should have found infringement under the doctrine of equivalents. Appellant's Br. ¶¶ 3, 6; *see also* J.A. 54 (Verdict Form, finding that the Group B products did not infringe the asserted claims of the '755 patent either "literally or under the doctrine of equivalents").

In determining equivalence, "[a]n analysis of the role played by each element in the context of the specific patent claim . . . inform[s] the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40–41 (1997). A patent owner must provide "particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or processes, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents." *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). "Such evidence must be presented on a limitation-by-limitation basis." *Id.*

Surti does not explain how the Group B products would have infringed under such a standard, or why the jury's verdict of noninfringement lacks substantial evidence support. Fleet again argues that, at the very least, the jury could have reasonably found that the Group B products lack the vertically extending vanes, channels, and slotted openings required by the claims even when evaluated under the doctrine of equivalents. Appellee's Br. at 48–53. In particular, Fleet points to the district court's construction

of "vertically extending" as it pertains to the vanes, channels, and slotted openings of the mudflap to mean "perpendicular or at a 90 degree angle to the road surface." *Id.*; *see also* J.A. 215. It is undisputed that the Group B products comprise four quadrants with vanes, channels, and slotted openings all oriented at diverging 45-degree angles. A reasonable jury could have found that components oriented at a 45 degree angle are not equivalent to components oriented at 90 degrees. The jury's finding that the Group B products do not infringe the asserted claims under the doctrine of equivalents was therefore supported by substantial evidence.

Surti next asserts that the jury verdict that he was not entitled to lost profits was not supported by substantial evidence. *See* Appellant's Br. ¶¶ 2 (asserting error from "[d]enial of proper damages award"), 3 (asserting, generally, that the "damage awards should be calculated accordingly using proper formula and proper laws"), 6 (requesting that we "[a]ward the damages based on Surti being a manufacturing comp[e]titor who lost profit that he could have made by selling the product to the Plaintiff or to the industry"). According to Fleet, however, the jury should not have even been presented with the question of lost profits because Surti was a non-practicing entity who had no lost profits. Appellee's Br. at 53–55. We agree with Fleet.

Surti never assigned his patent to any company, including Mudguard, where he served as president. *See* J.A. 156. Nor is there any evidence to suggest that Surti entered into any licensing agreement that could have provided the right to recover lost profits at trial. Moreover, Surti has made no attempt to satisfy the *Panduit* factors, which require a showing of (1) a demand for the patented product, (2) the absence of acceptable non-infringing substitutes, (3) its manufacturing and marketing capability to exploit the demand, and (4) the amount of profit it would have made. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (citing *Panduit Corp. v. Stahlin Bros. Fibre*

*Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)).    The jury's finding that Surti was not entitled to lost profits was therefore supported by substantial evidence.

Finally, Surti asserts that the jury verdict finding that Fleet's infringement was not willful was not supported by substantial evidence.    *See* Appellant's Br. ¶¶ 2, 4, 6. "Whether infringement is willful is a question of fact, and the jury's determination as to willfulness is therefore reviewable under the substantial evidence standard." *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 822 (Fed. Cir. 1992) (citations omitted).    Willful infringement must be proven by clear and convincing evidence and is determined by the totality of circumstances. *Id.*

Surti asserts that, not only was Fleet's conduct "willful and wanton," but further that he should have been awarded treble damages in view of that conduct.    Appellant's Br. ¶¶ 2, 6.    Fleet responds that the jury's finding of no willful infringement was supported by substantial evidence.    In particular, Fleet notes that the actions to which Surti points to make his assertions of willful conduct occurred two years before the asserted patent first issued. Appellee's Br. at 56–58.    Although, as the district court observed, the evidence establishes that Fleet was aware of Surti's patent application, J.A. 30, "[t]o willfully infringe a patent, the patent must exist and one must have knowledge of it. . . . [A]n application is no guarantee any patent will issue . . . . What the scope of claims in patents that do issue will be is something totally unforeseeable." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).

The evidence adduced at trial, at best, may demonstrate Fleet's knowledge of Surti's patent issuing after Fleet was already selling its Group A products.    Yet, even so, knowledge of the asserted patent and evidence of infringement, although necessary, is not sufficient for a finding of willfulness. *Bayer Healthcare LLC v. Baxalta Inc.*, 989

F.3d 964, 987 (Fed. Cir. 2021). Rather, willfulness requires deliberate or intentional infringement. *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020). The jury was free to weigh the relevant evidence of record, which included evidence suggesting that Fleet intended to avoid patent infringement. Moreover, even if some evidence existed to draw the opposite conclusion, that does not mean that the jury's finding of no willfulness was unsupported by substantial evidence.

In its cross-appeal, Fleet argues that the jury verdict that its Group A products infringe the '755 patent was not supported by substantial evidence. Appellee's Br. at 76–79. To support that claim, Fleet repeats the arguments that it made in challenging the district court's decision not to award JMOL in Fleet's favor as to direct infringement. In particular, Fleet argues that the Group A products do not have vanes, vertically extended channels, or slotted openings to prevent the passage of water and debris through the mudflap as recited in the asserted claims.

As construed by the district court, however, the "vanes" required by the claims are "relatively thin, rigid structure[s], like a blade, that [are] attached to another structure or surface." J.A. 442–43. Neither party has challenged that construction on appeal. As we found in *Fleet I*, a reasonable jury could conclude that the corresponding structures in Fleet's products are relatively thin and rigid and are attached as protrusions from the rear wall of the mudflap's channels. *Fleet I*, 761 F. App'x at 992. We further found that a reasonable jury could find that the presence of some channels vertically extending across the bottom of the Group A products may satisfy the claims. *Id.* at 993. Moreover, Fleet's arguments ignore that the claims do not require complete blockage of water and debris from passing through the mudflap's openings. *See* J.A. 218–20 (Claim Construction Order, noting that the "specification explicitly anticipates that some water and debris may pass through the slotted openings"). A reasonable jury could

18    FLEET ENGINEERS, INC. v. MUDGUARD TECHNOLOGIES, LLC

have found that the Group A products prevent sufficient amounts of water and debris from passing through, such that they directly infringe the asserted claims.

Fleet's arguments on appeal amount to a mere disagreement with the jury's findings. Such disagreement is insufficient to overturn a jury verdict that was otherwise supported by substantial evidence.

V

Surti also appeals the district court's finding that this case was not exceptional and did not merit an award of attorney fees, as well as the court's decision denying Surti's request for a permanent injunction. Appellant's Br. ¶¶ 2, 6.

A district court may, in exceptional cases, award reasonable attorney fees to the prevailing party under 35 U.S.C. § 285. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 548–51 (2014) (interpreting the phrase "exceptional cases" and setting forth basic guidelines for determining whether or not a request for attorney fees in patent infringement cases may be granted). We review a district court's decision not to award attorney fees under § 285 for abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 560–61 (2014).

As set forth by the district court, Surti has been proceeding *pro se* since 2015 and has provided no evidence of legal fees incurred before that date. J.A. 36–39. Instead, the record reflects that the two attorneys who represented Surti between 2013 and 2015 withdrew from the case after not being paid for their work. J.A. 246. Surti also failed to demonstrate that Fleet litigated this case in an unreasonable manner, asserted any plainly frivolous claims, or made any frivolous legal arguments during the course of this litigation causing the case to be exceptional. We therefore conclude that the court did not abuse its discretion in

determining not to award Surti attorney fees under § 285.

Regarding the requested permanent injunction, Surti asserts that the district court erred in its decision to deny issuing a cease-and-desist order against Fleet. Appellant's Br. ¶¶ 2, 6. "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

The district court held that Surti did not provide sufficient evidence to support the issuance of a permanent injunction. J.A. 18–22; *see also TEK Global, S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 792 (Fed. Cir. 2019) (quoting *eBay*, 547 U.S. at 391) (setting forth the factors considered in determining whether or not to issue an injunction).

A finding of infringement does not automatically entitle a patent holder to a permanent injunction. *eBay*, 547 U.S. at 391–93. Although Surti may have suffered an injury from the sale of an infringing product, that injury was not one of irreparable harm. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011) (holding that, in the context of patent infringement cases, there is no presumption of irreparable harm when a party establishes liability for patent infringement). The district court did not err in determining that Surti's injury was compensable through the reasonable royalty awarded by the jury.

In deciding Surti's motion for injunctive relief, the district court did not expressly address two of the *eBay* factors: the balance of the hardships between the claimant and the infringer and whether or not an injunction would serve the public interest. *See eBay*, 547 U.S. at 391. However, Surti did not independently argue those factors. *See* J.A. 21–22. The court therefore did not abuse its discretion in declining to issue a permanent injunction based only on the first two *eBay* factors.

Moreover, the purpose of an injunction is to prevent

future infringement. *See Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1377–78 (Fed. Cir. 2020). There is no evidence in the record that Fleet continues to sell the infringing products. *See* J.A. 22. It was therefore not an abuse of discretion for the district court to have held that, without evidence of future harm, Surti had not sufficiently established entitlement to injunctive relief.

## VI

Surti additionally makes passing references to trade secrets and various contract violations. Appellant's Br. ¶¶ 3, 6. Those issues were previously raised and decided by the district court years ago. We then affirmed those decisions in *Fleet I. See* 761 F. App'x at 994–95. The facts, law, and parties involved remain unchanged, and as Surti received a "'full and fair' opportunity to litigate" those claims, "the contemporary law of collateral estoppel leads inescapably to the conclusion that" Surti is collaterally estopped from relitigating those issues. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332–33 (1979); *see also id.* at 326 ("Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.").

Surti also makes passing references to other holdings involving damages and district court actions, such as allegedly "block[ing] the discussion of the opinion of the Federal Court as well as its own Claim Construction Opinion" that he desires to be reviewed on appeal. Appellant's Br. ¶¶ 4, 6. He further raises arguments that were not presented at the district court level, such as that he is entitled to additional damages "based on the mental stress this litigation has caused" him. *Id.* ¶¶ 2–4.

We recognize that Surti is not an attorney and that he is not fully acquainted with court rules and appellate procedures. However, the United States Supreme Court and

the Sixth Circuit Court of Appeals have instructed courts to enforce procedural rules even against *pro se* litigants who are not familiar with them. *See*, *e.g.*, *McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that the Court "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (noting that "the lenient treatment generally accorded to pro se litigants has limits").

Our law is well established that an argument must be properly raised in a party's opening brief in order to be considered on appeal. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006). Appeals to this court further operate under a general principal of forfeiture in view of a "failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Boeing Co. v. United States*, 968 F.3d 1371, 1380 (Fed. Cir. 2020) (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)). Because Surti failed to raise the remainder of his arguments adequately in his opening brief or at the district court prior to this appeal, we consider those arguments forfeited.

## CONCLUSION

We have considered both parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm*.

## **AFFIRMED**

### COSTS

No costs.